NOT DESIGNATED FOR PUBLICATION

No. 127,122

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PAUL L. SAVAGE and GAYLE WILLIAMS, Trustees of the
Savage-Harrington Family Trust, Paul L. Savage, and Paula J. Savage,
*Appellees*,

v.

AMAL TIMSAH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Submitted without oral argument. Opinion filed February 7, 2025. Affirmed.

*Jerry D. Bogle*, of Young, Bogle, Wells & Blanchard, P.A., of Wichita, for appellant.

*Patrick B. Hughes*, of Adams Jones Law Firm, P.A., of Wichita, for appellees.

Before ATCHESON, P.J., CLINE and PICKERING, JJ.

CLINE, J.: Amal Timsah appeals the district court's recognition of an easement that allows tenants of nearby triplexes to cross a driveway on Timsah's commercial lot to access a nearby street. She also challenges several procedural decisions and the court's award of attorney fees to Plaintiffs as damages for Timsah's slander of title. After careful review of the record and the parties' arguments in their briefs, we see no error and thus affirm.

1

Around 1940, four triplexes were built near the intersection of Harry Street and Yale Avenue in Wichita. In 1954, Norman and Dorothy Bekemeyer obtained the land on which the triplexes were built (Triplex Property) as well as an 18-foot strip of land (Strip) that connected the triplexes' parking lot to Harry Street. At the time, Harry Jabara owned land (Flower Shop Property) which abutted both the Triplex Property and the Strip. The record includes various maps which depict these properties, one of which identifies the Strip as the "Purported Easement."

 

The triplexes, now known as the Virgina Oaks Apartment Complex, contain residential rental units. At some point, triplex residents started accessing Harry Street by using the Strip. Residents would access the Triplex Property by entering on Yale Avenue, which is on the east side of the triplexes, and would exit the Triplex Property by using the Strip to reach Harry Street. Residents needed to use the Strip to access Harry Street

because there was not enough room for cars to drive in opposite directions without interfering with each other.

A one-way sign is located on the Triplex Property which routed residents to exit the triplex parking lot through the Strip. According to Paul Savage, one of the current interest owners of the Triplex Property, the one-way sign was there when he purchased the property in January 1979 and had been there for a while.

The Bekemeyers conveyed the Triplex Property to the Colemans by deed in 1960. Then in 1964, the Bekemeyers conveyed the Strip to Harry Jabara and his wife Mary. The deed to the Jabaras reserved to the Bekemeyers an easement of egress and ingress over the Strip. The deed from the Bekemeyers to the Colemans, conveying the Triplex Property, did not mention the Strip nor any easement.

After Norman Bekemeyer died intestate in the fall of 1969, Dorothy Bekemeyer was appointed as the administrator of his estate. In 1970, Dorothy filed a sworn petition in his probate case to make a conveyance. In the petition, Dorothy acknowledged that when the Bekemeyers conveyed the Triplex Property to the Colemans, the deed did not recite the location of an easement over the Strip. Even so, Dorothy said an easement of ingress and egress over the Strip for the Triplex Property existed and was being used at the time of the conveyance to the Colemans. Dorothy said she and Norman reserved this easement, which Dorothy contended was an appurtenance to the Triplex Property, as a permanent easement over the Strip when they sold the Strip to the Jabaras. Dorothy said the Colemans now wanted an additional conveyance describing the easement from Norman's estate. She contended in the petition that Norman's estate was legally bound to furnish this conveyance because the Bekemeyers' warranty deed to the Colemans warranted title to the real property, including this appurtenant easement. Dorothy asked the probate court for permission to issue a deed which conveyed all of Norman's right, title, and interest in the easement over the Strip to the Colemans. The probate court

3

granted Dorothy's request. On May 28, 1970, Dorothy recorded an administratrix deed which granted the Colemans and their heirs and assigns the right of ingress and egress over the Strip. She also recorded a quitclaim deed from herself personally to the Colemans which granted the same rights of ingress and egress over the Strip.

The Colemans sold the Triplex Property to James and Florene Cobb shortly thereafter. The deed included a non-exclusive easement of ingress and egress over the Strip, as did all subsequent deeds conveying the Triplex Property.

Plaintiffs acquired the Triplex Property in 1979. Their deed purported to include the easement, and a survey of the land completed before the sale concluded the Triplex Property included "a non-exclusive easement for ingress and egress appurtenant" over the Strip. Since 1979, Plaintiffs "[p]ositively" believed their property possessed an easement over the Strip.

Timsah acquired the Flower Shop Property in 2009. The deed conveying the Flower Shop Property to Timsah stated that the conveyance of the Flower Shop Property is "EXCEPT AND SUBJECT TO: Easements, restrictions and assessments of record."

In 2022, asphalt or a mixture of rock was dumped in the middle of the Strip. Plaintiffs sued Timsah, alleging she wrongfully blocked the Triplex Property's use of the easement for access to and from Harry Street. They sought an order declaring Plaintiffs have a valid ingress and egress easement over the Strip, allowing Plaintiffs and their tenants use of the easement, preventing Timsah from interfering with Plaintiffs' and their tenants' use of the easement, and an injunction requiring Timsah to remove the pile of materials blocking the easement and prohibiting her from blocking or otherwise interfering with the easement. By the time a pretrial conference order was entered, Plaintiffs had added a slander of title claim, for which they sought recovery of their attorney fees as damages.

After a bench trial, the district court found Plaintiffs possessed an easement over the Strip "under any of the three following alternate theories." First, it found that an easement exists by implication. Although the Bekemeyers did not expressly mention the easement when they passed the property to the Colemans, the court found "it was the intent of the Bekemeyers to pass the easement with the rest of the apartment property." The court secondly found an easement exists by prescription because "[s]ince at least 1979, 43 years before this suit was filed, and perhaps as far back as 1960, the apartment property has used [the] easement over the flower shop property for ingress or egress." And finally, the court found an easement exists by estoppel because of "both the continuous use of the easement and the maintenance done to the easement by the Savage family."

The district court also found Timsah "slandered the title of plaintiffs' property rights in their easement" because she "deni[ed] the existence of the easement and block[ed] plaintiffs' use of it." It also believed Timsah slandered Plaintiffs' title because she acted with malice when she allegedly said it was her intent to "'[t]each them a lesson.'" The court ordered Timsah to pay Plaintiffs' attorney fees as damages for their slander of title claim in the amount of $33,165.

This appeal followed.

REVIEW OF TIMSAH'S APPELLATE CHALLENGES

I. *Did the district court err in finding Plaintiffs possess an easement over an 18-foot strip of land on Timsah's property?*

Timsah argues the district court incorrectly found Plaintiffs possessed an easement under any of the theories advanced by Plaintiffs. We need not address each theory because Plaintiffs need only prevail on one. We therefore only address the district court's finding that Plaintiffs established an implied easement. And because we find Plaintiffs

5

established each element of an implied easement, we affirm the district court's decision on that basis.

A. *Standard of review*

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated review standard. We generally review the factual findings under the substantial competent evidence standard, whereby we must accept as true the evidence and all reasonable inferences drawn from the evidence which support the district court's findings and disregard any conflicting evidence or other inferences that might be drawn from it. We therefore do not reweigh the evidence or assess the credibility of witnesses. *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). The conclusions of law based on those findings are subject to unlimited review. 305 Kan. at 881. And as Timsah correctly suggests, we exercise unlimited review over the interpretation and legal effect of written instruments. See *Gilman v. Blocks*, 44 Kan. App. 2d 163, 170, 235 P.3d 503 (2010).

B. *Requirements to establish an implied easement*

An implied easement is created in several steps, which we recently explained in *Spencer v. Ziegler*, No. 126,848, 2024 WL 5102669, at *9-10 (Kan. App. 2024) (unpublished opinion):

> "Kansas courts have held that when an owner uses one part of his land for the benefit of another part, a quasi-easement is created. When a grantor conveys a portion of his or her property subject to an existing use on the retained parcel or when a grantor conveys a portion of the property together with an existing use on the retained parcel, a quasi-easement may be implied. To establish a quasi-easement, the following must exist: (1) common ownership at the time the use began; (2) the grantor intended for the use to continue at the time the property ownership was divided; and (3) the use was necessary and apparent or visible on the property.

"Likewise, a quasi-easement 'may ripen into an easement upon the landowner's transfer of either the quasi-servient tenement or the quasi-dominant tenement.' Bruce, Ely, & Brading, The Law of Easements & Licenses in Land, § 4:15 (2024). When the landowner sells the quasi-dominant tenement, 'the quasi-easement then becomes an implied easement and will be retained only if necessary for the reasonable enjoyment of the sold property.' Yet strict necessity is not required in order to find the existence of an implied easement. Rather, 'an implied easement by reservation or grant is based on the intent of the parties and what expectations one party could reasonably foresee the other party had from the sale of the land.' [Citations omitted.]"

The part of the land giving the benefit—here the portion of the Flower Shop Property containing the Strip—is known as the quasi-servient tenement. The part of the land receiving the benefit—the Triplex Property—is known as the quasi-dominant tenement. *DeBey v. Schlaefli*, 56 Kan. App. 2d 813, 817, 437 P.3d 1011 (2019).

C. *The district court correctly found Plaintiffs established the existence of an implied easement.*

Timsah's arguments do not directly address whether the elements to show an implied easement were established, and she relies on an overly narrow view of the evidence and the district court's ruling.

To begin, Timsah does not question the creation of a quasi-easement by the existing use of the Strip for ingress and egress to the Triplex Property at the time the ownership of the properties was severed. She makes no mention of this fact nor does she address or dispute Dorothy Bekemeyer's sworn statements in her petition in her husband's probate proceedings which establish this use.

Instead, Timsah focuses on the second element required to establish an implied easement—the Bekemeyers' intent when property ownership was divided. Timsah argues the Bekemeyers did not intend to create an easement which was appurtenant to the

7

Triplex Property—she claims they only intended to create an easement in gross for their personal use.

An appurtenant easement "inheres in the land, concerns the premises, and is necessary to the enjoyment thereof. It is incapable of existence separate and apart from the particular messuage or land to which it is annexed, there being nothing for it to act on." *Universal Motor Fuels, Inc. v. Johnston*, 260 Kan. 58, Syl. ¶ 5, 917 P.2d 877 (1996). Since an appurtenant easement attaches to the land, it "passes to the heirs or assigns of the owner of the land, such as by a conveyance or devise of the dominant estate." 260 Kan. 58, Syl. ¶ 6.

Easements in gross are different. They are "'a mere personal interest in or right to use land of another. It is not supported by [a] dominant estate, but it is attached to, invested in, the person to whom it is granted.'" *Allingham v. Nelson*, 6 Kan. App. 2d 294, 296, 627 P.2d 1179 (1981) (quoting 25 Am. Jur. 2d, Easements and Licenses § 12, pp. 426-27 [1966]). In *Allingham*, this court noted the difference between appurtenant easements and easements in gross:

> "'Whether an easement in a given case is appurtenant or in gross depends mainly on the nature of the right and the intention of the parties creating it. If the easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show that the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. Easements in gross are not favored by the courts, however, and an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate. If doubt exists as to its real nature, an easement is presumed to be appurtenant, and not in gross.'" 6 Kan. App. 2d at 296 (quoting 25 Am. Jur. 2d, Easements and Licenses § 13, pp. 427).

Timsah argues the easement was created as a personal license (an easement in gross) because when the Bekemeyers deeded the Strip to the Jabaras in 1964, the deed "described no land benefited by the easement." The deed did not mention the Triplex Property and only reserved "unto the grantors an easement of egress and ingress over said property."

While Timsah correctly reads the Jabara deed, there is other evidence in the record to support the district court's finding as to the Bekemeyers' intent: namely the documents filed in Norman Bekemeyer's probate proceeding. Dorothy stated in her sworn petition that she and Norman intended to convey an easement of ingress and egress appurtenant to the Strip when they conveyed the Triplex Property to the Colemans. She added that the easement reserved in the Jabara deed was meant to represent this appurtenant easement. She then created two deeds at the direction of a probate court, which both conveyed the right of ingress and egress over the Strip to the Colemans.

Timsah argues these probate deeds could not expand what she contends was the Bekemeyers' personal easement on the Strip because the Bekemeyers no longer owned the Strip at that time. Then she cites two cases—*Brady Fluid Svc., Inc. v. Jordan*, 25 Kan. App. 2d 788, 972 P.2d 787 (1998), and *Jobes v. Milburn Golf and Country Club*, 121 Kan. 264, 267-68, 246 P. 969 (1926)—interpreting express easements to support her argument. But the district court did not read the 1970 probate deeds (and the sworn statements in Dorothy's probate petition) to create an express easement in favor of Plaintiffs' predecessors in title and neither do we. Instead, the court correctly viewed the probate documents as evidence of the parties' intent at the time the Bekemeyers' sold the Triplex Property to the Colemans. That is, as evidence to support the existence of an implied easement not an express one.

This reading of the probate documents also seems the most logical since the Bekemeyers did not own the Triplex Property at the time they sold the Strip to the

9

Jabaras in 1964. There would thus be no apparent reason for the Bekemeyers to need an easement to access Harry Street from the Triplex Property. But on the other hand, the evidence shows the residents of the Triplex Property needed (and still need) the access easement across the Strip because they cannot exit the Triplex Property without risk of interfering with other cars.

As for the unity of ownership element, Timsah's position is not exactly clear. At one point in her brief, she admits the element of unity of ownership of the Strip and Triplex Property by the Bekemeyers at a time when the Strip was used by the Triplex Property for ingress and egress. Later in her brief, she recites general propositions from *Bushart v. West*, 215 Kan. 205, 523 P.2d 391 (1974), acknowledging the requirements of an implied easement and then noting no implied easement was found in *Bushart* because the court found no unity of title existed at the time of severance. But Timsah makes no effort to tie *Bushart*'s holdings to this case nor does she argue there was no unity of title of the Strip and Triplex Property in the Bekemeyers when they conveyed the Triplex Property to the Colemans.

The evidence shows the Bekemeyers severed their unity of title in the two properties when they conveyed the Triplex Property to the Colemans and retained the Strip which was eventually conveyed to the Jabaras. And when the Bekemeyers still possessed unity of title, the Strip was being used in a permanent and obvious way for access to the Triplex Property. In addition to Dorothy's sworn statements, a 1956 aerial photograph of the land in question shows from the direction that the cars are parked in the triplexes' parking lot that residents used the Strip to access the Triplex Property. While the cars are parked in the opposite direction in later photographs, all that shows is the direction of traffic changed—not that the Triplex Property residents were not using the Strip for egress from the Triplex Property.

Timsah does not appear to challenge the third element required to establish an implied easement—that the use of the Strip by the Triplex Property was necessary and apparent or visible on the property. Nor does she argue it has expired because it is no longer necessary for the reasonable enjoyment of the Triplex Property. And substantial competent evidence supports the existence of these elements to support the court's finding of an implied easement.

The use of the Strip, which continues to provide access between the Triplex Property and Harry Street, is necessary for the reasonable enjoyment of the Triplex Property and the triplexes' parking lot. Since there is not enough room for cars to drive in opposite directions without interfering with each other, traffic flowing in one direction from Yale Avenue to Harry Street (or previously from Harry Street to Yale Avenue), is necessary for the reasonable enjoyment of the Triplex Property. Paul Savage testified that the easement is important because it allows residents to safely park and it prevents their fear of "accidentally backing into somebody's car or maybe hitting somebody that's out there in the parking lot." In short, residents have two options: first, they could access the apartment by entering from Yale Avenue and then use the Strip to exit onto Harry Street, or second, they could not use the Strip but would face constant risk of hitting other cars because two-way traffic would be attempting to exit and enter the Triplex Property from Yale Avenue.

In addition, since at least 1979, when Plaintiffs acquired the Triplex Property, residents have used the access easement on the Strip and Plaintiffs believed their property possessed an easement over the Strip. Residents used the easement until the pile of rocks was placed in 2022, obstructing the easement, which was also long after Timsah acquired the property in 2009.

11

We find substantial competent evidence supports the district court's finding that an implied easement was created and still exists because it is necessary for reasonable enjoyment of the Triplex Property.

D. *Timsah's statute of frauds affirmative defense is waived and inapplicable*

Timsah next argues that if we find there is an implied appurtenant easement, we should not enforce it because it "must be in writing signed by the then-owner of Defendant's property in order to satisfy the Statute of Frauds." See K.S.A. 33-106 ("No action shall be brought . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing.").

Plaintiffs correctly point out two flaws in Timsah's argument. First, "[i]n responding to a pleading," Timsah must have "affirmatively state[d] any avoidance or affirmative defense," including the statute of frauds. K.S.A. 2023 Supp. 60-208(c)(1)(O). Timsah did not raise this affirmative defense in her responsive pleading, nor has she cited anywhere in the record where she raised this argument to the district court. She has thus waived it.

Secondly, if Kansas required implied easements to comply with the statute of frauds, the concept of implied easements would be extinguished. Implied easements are not meant to recognize express easements where there is an express writing describing the easement. See *Dubin v. Robert Newhall Chesebrough Trust*, 96 Cal. App. 4th 465, 475, 116 Cal. Rptr. 2d 872 (2002) ("If, in order to be valid and enforceable, an easement had to be in writing, there would be no such thing as an easement appurtenant by

12

implication."). Thus we find the statute of frauds defense is inapplicable to an implied easement claim.

We therefore find Timsah not only waived the statute of frauds as an affirmative defense but, even if she had not, it would not apply nor defeat the court's finding of an implied easement.

For these reasons, we affirm the district court's finding that an implied easement existed. And as mentioned above, we need not address the alternate theories on which the court found an easement existed since Plaintiffs need only establish one.

II. *Did the district court err in admitting Timsah's deposition as rebuttal evidence?*

Timsah next argues the district court erred when it admitted her deposition as rebuttal evidence.

Plaintiffs point out that even though Timsah objected to the admission of her deposition as rebuttal evidence at trial, "she did not do so for the reasons she now argues that it should not have been admitted." K.S.A. 60-404 states:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

In *State v. Scheetz*, 318 Kan. 48, 59, 541 P.3d 79 (2024), the court held K.S.A. 60-404 "mean[s] a party cannot object to evidence on one ground at trial and then substitute another ground on appeal or assert a general ground at trial and then specify more particular grounds on appeal."

Timsah's objection to the district court concerned the fact that she was represented by counsel at the deposition and that counsel no longer represented her at trial. When asked by the district court if she had an objection to the admission of the deposition she responded:

> "Yes, I do, because I was—this was [*sic*] deposition was taken with a counsel that I don't have at this time, and was advised certain ways to answer certain things, and I feel like I don't think this is a right for me. I should be able to speak about my rights to you directly, Your Honor, because I don't believe this should be admitted, no, because I was basically coerced by [Plaintiffs' counsel] on some of the—some of the questions."

Shortly after, she also stated:

> "The only thing that I would ask in consideration is my attorney is no longer on this case and I feel like at a certain points [*sic*] where he could have stepped in and said something, that he didn't. So I feel like, Your Honor, since—I would like for you to take that in consideration. That's it."

On appeal, she provides different reasons why she believes the district court erroneously admitted the evidence. She argues the court should not have admitted the deposition "without any specification of what was to be rebutted or what portion of the deposition was rebutted." Timsah also argues the court "must hear all the testimony and examine all the exhibits admitted before ruling." Later in her brief, she asks us to set aside the district court's judgment because of the court's "probable failure to read Defendant's deposition." Timsah does not provide any evidence to suggest the district court did not review the deposition in consideration of its ruling.

Because Timsah changed her objection to the deposition on appeal, we find the objections she now raises are unpreserved. *Scheetz*, 318 Kan. at 59; see K.S.A. 60-404.

III. *Did the district court err when it admitted an email that was sent from Timsah's counsel to Plaintiffs' counsel?*

Timsah next argues the admission into evidence of an email from her former counsel to Plaintiffs' counsel violated her right to attorney-client privilege and the email was inadmissible hearsay. In the email, her former attorney remarked: "I advised [Timsah] that in my opinion the easement was valid and she should recognize it. . . . I've told [Timsah] she has to remove her obstruction."

Timsah claims to have made a hearsay and attorney-client privilege objection to this email when Plaintiffs' counsel deposed her. Timsah fails to provide a record citation supporting that she made these objections during her deposition. Even assuming she did, she did not object to the evidence at trial. In fact, in the pretrial order, she stipulated to the admission of the email. At trial, the court told her she had "stipulate[d] to foundation and admissibility of the exhibits . . . other than as to relevancy." And she told the court she did not have an objection to the exhibits.

Timsah does not recognize that she needed to raise her objection to the piece of evidence at trial. In *Scheetz*, 318 Kan. 48, Syl. ¶ 1, the court held: "The contemporaneous objection rule under K.S.A. 60-404 requires a party to make a timely and specific objection *at trial* to preserve an evidentiary challenge for appellate review. The statute has the practical effect of confining a party's appellate arguments to the grounds presented to the district court." (Emphasis added.) The record reveals that not only did Timsah fail to object to the evidence at trial, but she agreed to the admission of the exhibit when she stipulated to it. To the extent the email contains attorney-client privileged information, Timsah waived her objection when she stipulated to the admission of the exhibit. See *State v. Miller*, 308 Kan. 1119, 1153, 427 P.3d 907 (2018) ("Only the client may waive [attorney-client] privilege.").

15

Plaintiffs raise the issue that Timsah failed to object to the admission of the exhibit at trial. In response, Timsah argues in her reply brief that K.S.A. 60-404 is subject to exceptions. She relies on *State v. Race*, 293 Kan. 69, 75, 259 P.3d 707 (2011), which found that even though "Race did not lodge a hearsay objection" to testimony at trial, the court was nevertheless "persuaded to make a substantive, though not a procedural, exception" to the contemporaneous objection rule "because Race did make an unsuccessful hearsay objection to earlier testimony." But in that case, the hearsay objection Race made to "earlier testimony" occurred at trial. 293 Kan. at 75. At no point did Timsah object to the exhibit at trial. *Race*'s substantive exception to the contemporaneous rule is therefore inapplicable. We find Timsah waived her objection to the admission of this email at trial.

IV. *Did the district court err in finding Timsah lacked reasonable cause to believe Plaintiffs did not own the easement?*

Timsah argues the district court improperly found she "is without reasonable cause to believe Plaintiffs are without an easement on her property." Plaintiffs interpret this argument to mean Timsah is contending the district court's decision on the slander of title claim was erroneous. In ruling on Plaintiffs' slander of title claim, the district court stated:

> "Ms. Timsah, you did this on purpose with an intent to—and I'll quote you— 'Teach them a lesson,' close quotes, but had no legal right to do it. You were going to teach them a lesson in which, in this Court's eyes, indicates malice. *You lacked any reasonable cause for doing this*, and I find that your statements about the easement being unsafe and fear that someone would get injured and sue you to not be credible." (Emphasis added.)

To support her argument that she had reasonable cause to believe Plaintiffs did not own the easement, Timsah contends the police "sided with" her instead of Plaintiffs, and that her testimony was "replete with a reasonable basis for her opinion, i.e. trips to the

16

city building planning department, County Courthouse, Register of Deeds, and police officer's ordering Plaintiffs' agents off her property." She believes her "testimony regarding the police officers is substantiated by Plaintiffs' witnesses."

Timsah fails to cite the record to support any of these material statements. Earlier in the facts section of her briefing, however, she states and cites a few times in the record where testimony was elicited concerning what the police said about the easement.

For instance, she notes that a police officer "denied [Paul Savage's] right to be in the alley on Defendant's property and asked him to leave." But to support this statement, she cites her own testimony at trial. And while she notes in the facts section that "[t]he police told one of Plaintiffs' employees the contested property was not an easement and to leave or he is going to jail," and claims the police on another occasion told Plaintiffs they did not have an easement, she again only cites her own deposition testimony in support.

None of these citations support the fact that Plaintiffs' witnesses substantiated her claims about the police. And to the extent Timsah testified the police sided with her, the district court found that testimony uncredible. In reaching its decision, the district court remarked: "The plaintiffs' witnesses' testimony was credible, and I will find the defendant's testimony was not credible." The court determined Plaintiffs' witnesses were more credible after "observ[ing] . . . the testimony of the witnesses and watched their body language and listened to their words and made that assessment."

Timsah is asking us to review witness testimony and credibility. But we cannot assess the credibility of Timsah and Plaintiffs' testimonies, nor can we reweigh the impact of Timsah's claim that the police "sided" with her. In her reply brief, Timsah maintains the district court's "finding that Defendant was not credible relates only to [Timsah's] testimony that the easement was unsafe, she had a fear of injury and she was

17

threatened by Plaintiffs' tenants with suit." Timsah misconstrues the district court's finding on witness credibility. Although she is correct the court observed "that [Timsah's] statements about the easement being unsafe and fear that someone would get injured and sue [Timsah] to not be credible," the court made other rulings about Timsah's credibility. Before the district court issued its legal rulings, it made the general statement that it observed witnesses' body language and listened to witnesses' words, to reach the conclusion that "plaintiffs' witnesses' testimony was credible" and Timsah's "testimony was not credible."

We therefore affirm the district court's factual finding on this issue as well.

V. *Did the district court err in awarding Plaintiffs attorney fees for their slander of title claim?*

Timsah also contests the district court's decision to award Plaintiffs their attorney fees. She contends the district court has no authority to award attorney fees to a party who prevails in a slander of title claim. She points out that Kansas "follows the 'American Rule' which provides that 'unless authorized by statute or specified by contract, litigants are responsible for their own attorney fees.'" See *Unruh v. Purina Mills, Inc.*, 289 Kan. 1185, Syl. ¶ 11, 221 P.3d 1130 (2009) (A court may not award attorney fees absent statutory authority or an agreement by the parties. Without such authority, a trial court's equitable powers do not extend to the awarding of attorney fees.).

This court has unlimited review of a district court's authority to award attorney fees since it is a question of law. When a district court has the authority to grant attorney fees, that decision is reviewed under an abuse of discretion standard. 289 Kan. 1185, Syl. ¶ 10.

To begin, Timsah misunderstands the basis for the district court's award of attorney fees. The district court did not award Plaintiffs their fees because they prevailed—it awarded fees as damages for their slander of title claim. This distinction is critical. The district court's decision did not shift the burden of fees to the successful party but instead compensated Plaintiffs for costs incurred to remove the cloud Timsah placed on Plaintiffs' title to the easement.

Timsah primarily relies on *Diehl v. Kowalski*, No. 114,706, 2016 WL 6651575, at *3-4 (Kan. App. 2016) (unpublished opinion), which held that in "quiet title actions brought by executors against wrongdoers who cloud a title," the executors cannot recover attorney fees because there is no contractual or statutory basis for the fee award. But her reliance is misplaced because *Diehl*—like *Unruh* and *Idbeis v. Wichita Surgical Specialists, P.A.*, 285 Kan. 485, 173 P.3d 642 (2007), (the case cited by the Kansas Supreme Court in *Unruh*)—examined whether a prevailing party was entitled to attorney fees, not whether the party was entitled to fees as damages. See *Unruh*, 289 Kan. at 1200-01 (examining Kansas Consumer Protection Act's provisions allowing a court to award attorney fees to a prevailing party); *Idbeis*, 285 Kan. at 488-89 ("As a general rule, attorney fees and expenses of litigation, other than court costs, incurred by a prevailing party are not recoverable against the defeated party in the absence of a clear and specific statutory provision or an agreement between the parties.").

In *Diehl*, the district court awarded Diehl her attorney fees incurred in the underlying lawsuit where she sought to rescind the conveyance of a residence and return title of the residence to an estate. Diehl asserted both breach of contract and quiet title claims in the suit. She prevailed on the quiet title claim but not the contract claim. Yet the district court awarded Diehl her attorney fees as the prevailing party based on a prevailing party clause in the real estate contract at issue. 2016 WL 6651575, at * 2. Our court reversed the award for several reasons, including:  (1) the real estate contract only provided for recovery of fees in an arbitration proceeding, (2) there was no statutory basis

19

for awarding fees to Diehl as the prevailing party, and (3) several decisions by the Kansas Supreme Court which held a court's equitable powers generally do not include the authority to award attorney fees for services in the action in which the judgment is obtained. 2016 WL 6651575, at *3-4 (citing *Nicholson v. Fawley*, 112 Kan. 124, 210 P. 482 [1922]; *Idbeis*, 285 Kan. at 495; *Unruh*, 289 Kan. at 1200; *In re Estate of Strader*, 301 Kan. 50, 61, 339 P.3d 769 [2014]; *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 [2013]). But, again, the cases we cited in *Diehl* all addressed whether a party was entitled to an award of their fees in prosecuting the suit for having prevailed, not as an element of damages for the cost of removing the cloud wrongfully placed on their title.

In reaching the decision in *Diehl*, our court acknowledged and refused to follow *Reese v. Brame*, No. 67,131, unpublished opinion filed April 10, 1992 (Kan. App.), based mainly on the general rule prohibiting the award of fees to a prevailing party without statutory or contractual authority. *Diehl*, 2016 WL 6651575, at *3. But in discounting *Reese*, our court missed the same critical nuance in *Reese* that Timsah has missed here. That is, Reese was not awarded attorney fees as the prevailing party—he was awarded attorney fees as an element of his damages.

Reese was the executor of an estate and sued to quiet title in property owned by the estate that had been clouded by a title document which misdescribed another piece of property. After presuit efforts to clear up the estate's title to its property were unsuccessful, Reese was forced to sue—and incur attorney fees—to remove the cloud wrongfully placed on the estate's title. *Reese*, slip op. at 2-3. Reese sought recovery of his attorney fees as damages, not for prevailing in the lawsuit. Slip op. at 3-4. The trial court relied on its powers of equity to award Reese part of those fees as damages for quieting title to the property. Slip op. at 4. While our court acknowledged the general rule that an award of attorney fees must be supported by statute or contract, we affirmed the trial court's award of attorney fees as damages incurred to quiet title. Slip op. at 6-7. In doing

20

so, we relied on *Campbell v. Cubbon*, 98 Kan. 642, 158 P. 1121 (1916), a case in which the Supreme Court noted the "plaintiff had both the right to have the title to her real estate cleared and to recover any expense incurred in enforcing that right." 98 Kan. at 644.

In *Campbell v. Cubbon*, Cambell sued Cubbon to set aside a fraudulent deed which Cubbon had procured from Cambell and to quiet title to Campbell's land. After Campbell prevailed in that lawsuit, Campbell sued Cubbon and others to recover damages she incurred as a result of the fraudulent deed, which included attorney fees incurred in the first lawsuit to quiet her title. The district court dismissed the second suit on res judicata grounds but our Supreme Court reversed. It held the two actions addressed separate issues and noted Campbell's cause of action for the expense in removing the cloud on her title (her attorney fees) did not accrue until the first action was determined. 98 Kan. at 644-45.

In discussing *Campbell v. Cubbon* in *Diehl*, 2016 WL 6651575, at *3, our court missed the same nuance it missed in *Reese.* That is, we hearkened back to the American Rule and pointed out another case—*Nicholson v. Fawley*—where the Supreme Court refused to award fees to the prevailing party under that rule. But, yet again, *Nicholson* addressed the prevailing party issue, not whether attorney fees could be awarded as damages like they were here, in *Reese*, and in *Campbell v. Cubbon*.

In *Nicholson*, a plaintiff sued for specific performance of a contract to convey property. The district court refused to grant specific performance but awarded damages for expenses the plaintiff incurred in reliance on the contract and plaintiff's attorney fees incurred to prosecute the case. On appeal, the Supreme Court reversed the attorney fee award because there was no statutory basis to justify an award of attorney fees "for services in the action in which it is obtained." 112 Kan. at 126.

While not mentioned by the parties, we point out there is precedent in Kansas for awarding attorneys' fees as damages in a slander of title action. In *Vaught v. Jonathan L. Pettyjohn & Co.*, 104 Kan. 174, 178 P. 623 (1919), our Supreme Court affirmed a judgment in a slander of title action which included attorney fees as an element of damages.

In *Vaught*, the plaintiff attempted to obtain a mortgage loan on his farm from Defendants. Defendants rejected the loan documents for various technical deficiencies in Vaught's execution, so Vaught obtained a loan elsewhere. Meanwhile, Defendants filed and recorded their mortgage documents even though they had rejected the documents and not loaned Vaught any money. When Vaught tried to sell the farm, Defendants' filing was discovered which prevented the sale. The real estate brokers who negotiated the failed sale sued Vaught for return of their commission and Vaught incurred $100 in attorney fees in defending their action. When Vaught sued Defendants for their slander of his title to the farm, the district court awarded him these attorney fees as special damages, along with the lost profit he anticipated from the failed sale. The Supreme Court affirmed this decision with no mention of any recovery of attorney fees Vaught incurred in his successful suit against Defendants. 104 Kan. at 178.

More recently, our court touched on this issue in *Sahgal v. DMA Electric, Inc.*, No. 105,466, 2012 WL 718945 (Kan. App. 2012) (unpublished opinion). There, the Sahgals filed suit against DMA for slander of title, under K.S.A. 60-1108, to adjudicate and cancel a mechanic's lien filed by DMA. DMA then counterclaimed to enforce the mechanic's lien and for attorney fees, as a sanction against the Sahgals under K.S.A. 60-211. The district court found against the Sahgals on their slander of title claim after ruling DMA did not act with the requisite malice to support the claim. But the court denied DMA's request for sanctions as baseless. 2012 WL 718945, at *1.

On appeal, DMA argued "the Sahgals should have been sanctioned because they suffered no damages as a result of the mechanic's lien and wound up trying to recover only the attorney fees incurred in pursuing the action." 2012 WL 718945, at *3. We ultimately found the district court did not err in ruling the Sahgals did nothing warranting sanctions for trying to pursue their slander of title action or in trying to recover their attorney fees as damages in that action. In *Sahgal*, we assumed whether attorney fees expended in a successful slander of title suit may be recovered as a damage in that action was an open question since we had found no Kansas case directly or even obliquely addressing it. But we found the Sahgals had made a good-faith argument to support their position "given the extensive authority favoring attorney fees as damages." 2012 WL 718945, at *4. (citing *Brown v. Hanson*, 2011 S.D. 21, ¶ 35, 798 N.W.2d 422 [2011]; see Restatement [Second] Torts § 633, comment k; *Susman v. Schuyler*, 328 So. 2d 30, 32 [Fla. App. 1976]).

Plaintiffs also string cite cases from various states to support the same proposition: that courts "have expressly allowed the recovery of attorney fees incurred to clear title as special damages." For instance, they cite *Horgan v. Felton*, 123 Nev. 577, 587, 170 P.3d 982 (2007), which noted that "[t]he clear majority rule is that attorney fees incurred in removing spurious clouds from a title qualify as special damages in an action for slander of title."

*Horgan* thoughtfully explained that "attorney fees are permissible as special damages in slander of title actions because 'the defendant . . . by intentional and calculated action leaves the plaintiff with only one course of action:  that is, litigation. . . . Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant.'" 123 Nev. at 587 (quoting *Rorvig v. Douglas*, 123 Wash. 2d 854, 873 P.2d 492 [1994] [reversing 85-year-old precedent disallowing attorney fees as special damages in slander of title cases and adopting Restatement position]). Since slander of title "forces the plaintiff to litigate in order to clear his title, the plaintiff's attorney fees

and costs necessary to accomplish that purpose constitute actual harm or injury to the plaintiff that was proximately caused by the tort and therefore should be compensated." *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1032, 141 Cal. Rptr. 3d 109 (2012).

For these reasons, we see no error in the district court's award of Plaintiffs' attorney fees as damages incurred as a result of Timsah's slander of their title. Timsah makes no argument about the reasonableness of the court's attorney fee award, simply the court's authority to award fees. And because we find the court was authorized to award Plaintiffs' fees as damages in their slander of title claim, we affirm that award.

## VI. *Did the district court abuse its discretion in denying Timsah's motion for a continuance?*

Timsah lastly argues the district court abused its discretion when it denied her a continuance. She fails to cite to the place in the record where she moved for a continuance. An independent review of the record on appeal located her motion. In it, she provided a one sentence explanation about why she wanted trial to be continued: "In support of the continuance, Defendant alleges she needs the continuance for good cause to evaluate her claims and defenses, explore settlement further, and consider retaining new counsel."

District courts have broad discretion in granting or denying continuances in civil cases. *Fouts v. Armstrong Commercial Laundry Distributing Co.*, 209 Kan. 59, 64, 495 P.2d 1390 (1972). "The grant or denial of a motion for continuance rests within the sound discretion of the trial court, and will not be disturbed on appeal in the absence of a clear showing of abuse." *Security National Bank v. City of Olathe*, 225 Kan. 220, 222, 589 P.2d 589, 592 (1979). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based

24

on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Timsah does not articulate how the court abused its discretion other than that she faced consequences as a result of the court denying her motion for a continuance. These consequences, according to her, include: admission of the email from her former attorney, several times at trial Plaintiffs' objections to her hearsay evidence was sustained, loss of assistance of counsel to help her in developing testimony and cross-examining Plaintiffs' witnesses, and failure to produce self-authenticating city and county exhibits to overcome hearsay objections. Since she does not allege the district court made an error of law or fact, we examine whether a reasonable person would deny Timsah's motion for a continuance.

Plaintiffs argued below three reasons why the continuance should be denied. First, they contended that under K.S.A. 60-211(a), "'[e]very pleading, written motion and other paper must be signed by at least one attorney of record in the attorney's name, or by a party personally *if the party is unrepresented*.'" The statute directs the court to "strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." K.S.A. 2023 Supp. 60-211(a). But otherwise, the statute does not specify what occurs when a represented party personally files a motion on their own. Plaintiffs continue to make this argument on appeal. They are correct that when Timsah submitted her continuance motion on September 1, 2023, she was represented by counsel. Her counsel moved to withdraw from the case on September 7, 2023. But Plaintiffs fail to point to any authority stating motions should be dismissed if a represented party files a motion on their own.

Plaintiffs' other arguments to the district court are more persuasive. Plaintiffs argued Timsah did not need the continuance, among other reasons, because a pretrial order was entered in June 2023, two months before Timsah's motion. The pretrial order,

according to Plaintiffs, "set forth the parties' contentions, defining their positions, identified all of the legal and factual issues for the court to decide at trial, and identified all of the exhibits and witnesses. The defendant's evaluation of her claims and defenses was necessarily completed" when the pretrial order was submitted. Meaning Timsah did not need more time to keep evaluating her claims and defenses when she already submitted to the district court her final contentions in the pretrial order. We find this reasoning persuasive.

Plaintiffs next argued Timsah did not need more time to consider retaining new counsel. According to them, Timsah was on her third set of attorneys in the case. Plaintiffs do not provide a record citation on appeal to support this statement. But the record shows Timsah had consulted at least two attorneys before filing this motion. Plaintiffs asserted that "[i]f the defendant wanted to switch counsel, she should have taken active efforts to do so, not file a motion of a continuance so that she can think about it." Plaintiffs make a valid point.

Last, Plaintiffs argued that a continuance would only deepen the injuries they were feeling. They noted a large pile of asphalt had covered the easement since July 2022 and that easement "provides the means by which the residents of the plaintiffs' apartments can exit the apartment property along a narrow one-way drive that enters the apartments from an alley and exits over the driveway to Harry Avenue." They pleaded with the district court to deny the continuance because "[t]he burden of the defendant's conduct is ongoing, compounding every day until judgment is entered." Meaning, there was an ongoing driving issue at the Triplex Property where the safety of residents, as drivers and pedestrians, was at risk because they could not use Harry Street. These factors also provide a reasonable basis for the court's decision.

Overall, we find the district court's decision to deny Timsah's motion for a continuance was reasonable. Timsah fails to show the district court abused its discretion in denying the motion.

Affirmed.